Bell, J.
 

 These cases were presented together. They involve identical questions and will be disposed of in this opinion.
 

 At the outset it is important to emphasize (1) that the attacks upon the respective plans of mutualization of Union Central and Ohio National are made by policyholders; (2) that the rights of each policyholder are fixed by the terms of his contract (life insurance policy) ; (3) that the controversies were disposed of in the Court of Appeals upon demurrers to the answers; and (4) that each of the appellants having failed to offer evidence in support of the allegations of his petition, there are no presently established facts (except those alleged in the answer, which are admitted by the demurrer thereto) before this court for consideration in determining the questions at issue.
 

 The ultimate question to be determined is whether the act passed by the General Assembly, entitled an act “to revise the laws relating to the conversion of stock life insurance corporations into mutual life insurance corporations and for that purpose to amend Sections 9364-1, 9364-2, and 9364-3 of the General Code, and to enact Sections 9364-2®, 9364-2&, 9364-4, 9364-5, 9364-6, 9364-7 and 9364-8 of the General Code” (119 Ohio Laws, 70), is unconstitutional and void.
 

 The attacks by appellants upon the constitutional validity of the act are two-fold: (1) That the act is unconstitutional and void on its face, being in conflict with Section 1, Article II of the state Constitution in that the act delegates legislative power to the superintendent, and with Section 26, Article II of that same instrument, in that the act is to take effect upon the approval of some authority other than the General
 
 *340
 
 Assembly; and (2) that the act is unconstitutional and void because tbe operative effect thereof, as applied to the respective plans of mutualization adopted by Union Central and Ohio National, results in the impairment of the obligation of the contract between the policyholder and his company, and amounts to the taking of property without due process of law in violation of Section 19, Article I, and Section 28, Article II, Constitution of Ohio, and Section 10, Article I, and Section 1, Fourteenth Amendment, Constitution of the United States.
 

 These claims will be considered in the order stated.
 

 Before directing our attention to the specific questions presented it should be observed that although the legislatures of Pennsylvania, Illinois, New Jersey, Indiana, California and New York have enacted legislation authorizing the conversion of a stock life insurance corporation into a mutual life insurance company, and although numerous companies have been so converted, there are no reported cases by courts of last resort that experienced and diligent counsel have been able to find wherein a policyholder has contested the constitutionality of an act authorizing such conversion.
 

 It is the duty of this court to reconcile legislative acts with constitutional provisions, if possible, but it is equally our duty to strike down any act which clearly conflicts with the provisions of the Constitution of the United States or the Constitution of this state.
 

 A legislative act may be unconstitutional upon its' face or it may be valid on its face but unconstitutional because of its operative effect upon a particular state of facts. See
 
 Poindexter
 
 v.
 
 Greenhow, Treas.,
 
 114 U. S., 270, 29 L. Ed., 185, 5 S. Ct., 903;
 
 N. C. & St. L. Ry.
 
 v.
 
 Walters, Commr.,
 
 294 U. S., 405, 79 L. Ed., 949, 55 S. Ct., 486;
 
 Webb
 
 v.
 
 Adams,
 
 180 Ark., 713, 23 S. W. (2d), 617;
 
 State, ex rel. Moseley,
 
 v.
 
 Lee,
 
 319 Mo., 976, 5 S. W. (2d), 83;
 
 Max Factor & Co.
 
 v
 
 Kunsman,
 
 5 Cal. (2d),
 
 *341
 
 446, 55 P. (2d), 177;
 
 Gray, Secy. of State,
 
 v.
 
 Central Florida Lumber Co.,
 
 104 Fla., 446, 140 So., 320;
 
 Miami Home Milk Producers Assn.
 
 v.
 
 Milk Control Bd.,
 
 124 Fla., 797, 169 So., 541;
 
 State, ex rel. Miller,
 
 v.
 
 Doss, Assessor,
 
 141 Fla., 233, 192 So., 870;
 
 State, ex rel. Harper,
 
 v.
 
 McDavid,
 
 146 Fla., 1, 200 So., 100;
 
 Lee
 
 v.
 
 Smith,
 
 189 Miss., 636, 198 So., 296;
 
 Pennsylvania Rd. Co.
 
 v.
 
 Driscoll,
 
 330 Pa., 97, 198 A., 130;
 
 State, ex rel. Woolsey,
 
 v.
 
 Morgan, Clerk,
 
 138 Neb., 635, 294 N.
 
 W.,
 
 436;
 
 State, ex rel. Davenport,
 
 v.
 
 International Harvester Co.,
 
 216 Ind., 463, 25 N. E. (2d), 242;
 
 Village of South Holland
 
 v.
 
 Stein,
 
 373 Ill., 472, 26 N. E. (2d), 868, 127 A. L. B., 957;
 
 Daly
 
 v.
 
 Madison County,
 
 378 Ill., 357, 38 N. E.(2d), 160;
 
 Castle
 
 v.
 
 Mason,
 
 91 Ohio St., 296, 110 N. E., 463, Ann. Cas. 1917A, 164;
 
 Village of Euclid
 
 v.
 
 Camp Wise Assn.,
 
 102 Ohio St., 207, 131 N. E., 349;
 
 Voeller
 
 v.
 
 Neilston Warehouse Co.,
 
 136 Ohio St., 427, 26 N. E. (2d), 442.
 

 The first subject to engage our attention is one of legislative power.
 

 Section 2, Article XIII of the state Constitution reads in part as follows:
 

 “Corporations may be formed under general laws; but all such laws may, from time to time, be altered or repealed. * * * ”
 

 This provision of the Constitution was adopted on September 3, 1912, and affords full and complete authority to the General Assembly to provide by general laws for the formation of corporations and for changes in the organization or structure of existing corporations.
 

 This provision was in full force and effect when each of the appellants entered into his contract with his respective company and therefore he could have no vested right in the corporate structure of the company. He knew or is presumed to have known that the General Assembly had express constitutional authority to
 
 *342
 
 authorize a change in the organization or structure of any corporation formed under the laws of this state.
 

 Our next question is: Does the act delegate legislative power to the superintendent?
 

 Section 1, Article II of the state Constitution provides in part:
 

 “The legislative power of the state shall be vested in a general assembly * * *.”
 

 It is firmly established that the General Assembly cannot delegate its legislative power and that any attempt so to do is unconstitutional. See
 
 Cincinnati,W. & Z. Rd. Co.
 
 v.
 
 Commrs. of Clinton County,
 
 1 Ohio St., 77;
 
 State, ex rel. Allison,
 
 v.
 
 Garver,
 
 66 Ohio St., 555, 64 N. E., 573;
 
 State, ex rel. Godfrey,
 
 v.
 
 O’Brien, Treas.,
 
 95 Ohio St., 166, 115 N. E., 25.
 

 On the other hand legislative acts granting to a board or an administrative agency gwasi-legislative or gwosi-judicial power, have been uniformly sustained where the. General Assembly has laid down the policy and established the standards while leaving to an administrative agency the making of subordinate rules within prescribed limits and the determination of facts to which the legislative policy is to- apply. See
 
 Village of Fairview
 
 v.
 
 Giffee,
 
 73 Ohio St., 183, 76 N. E., 865;
 
 Miami County
 
 v.
 
 City of Dayton,
 
 92 Ohio St., 215, 110 N. E., 726;
 
 Fassig
 
 v.
 
 State, ex rel. Turner, Atty. Genl.,
 
 95 Ohio St., 232, 116 N. E., 104;
 
 Green
 
 v.
 
 State Civil Service Commission,
 
 90 Ohio St., 252, 107 N. E., 531.
 

 It is here claimed that the General Assembly failed to state its policy with reference to mutualization; failed to establish a standard for the superintendent to follow; and failed to require a finding in the exercise of his authority to authorize the mutualization, all of which it is claimed amounts to a delegation of legislative power. It is further claimed that the law takes affect upon the authority of the superintendent and not upon authority of the General Assembly. Attacks,
 
 *343
 
 such as here made upon legislative action, upon the ground of - ‘ delegation of legislative power, ’ ’ are neither new nor novel. No hard and fast rule can be formulated as to what is or what is not a
 
 delegation of legislative poiver.
 
 Whenever this question is raised the answer must be found in the language of the act under attack.
 

 It must be conceded that the legislative body cannot deal with each specific case and therefore legislative action in the main must be general in character, which is the basis for the rule that it is no violation of the constitutional inhibition against the delegation of legislative power for the General Assembly to establish a policy and fix the standards for guidance of administrative agencies, while leaving to them the the making of subordinate rules within those fixed standards, and the determination of facts to which the legislative policy applies.
 

 In our state the granting of the rule-making power to the Department of Health, the Tax Commissioner and the Board of Tax Appeals, and the granting of the fact-finding power to the Industrial Commission and the Public Utilities Commission, are but a few examples of such legislation. None of the acts granting such powers has been found to be unconstitutional.
 

 The General Assembly of Ohio has been diligent and painstaking in its attempt to protect the public in financial matters. It has set up administrative agencies for the supervision of banks, building and loan associations, insurance companies and stock brokers.
 

 A casual reading of the acts creating such agencies and defining their duties will disclose that those agencies have been granted g^wsLlegislative and
 
 quasi-
 
 judicial powers.
 

 It must be kept in mind, also, that the act here in question is permissive, not mandatory, and that mutualization can never be effected unless a majority of
 
 *344
 
 the directors, shareholders and policyholders, and the superintendent approve.
 

 A literal quotation of the entire act would unduly extend this opinion, therefore we shall be content with calling attention to the specific parts thereof which we deem pertinent to and dispositive of the questions involved.
 

 Section 9364-1, General Code, grants authority for the conversion of any domestic stock life insurance company, incorporated under general law, into a mutual life insurance company and provides that the company to that end may carry out a plan for the acquisition of the shares of its capital stock.
 

 Before any plan may become effective four successive steps must be accomplished. (1) The plan must be approved by a vote of a majority of the directors of such corporation; (2) the plan must be approved by a vote of shareholders, representing a majority of the capital stock then outstanding, at a meeting called for that purpose; (3) the plan must be approved by a majority of the policyholders voting at a meeting called for that purpose; and (4) the plan must be submitted to the superintendent and approved by him, in writing, provided that where the purchase price of the shares of the capital stock of the corporation has been fixed by the plan neither the plan nor any such payment shall be approved by the superintendent unless at the time of the approval the corporation, after deducting the aggregate sum appropriated by such plan for the acquisition of any part or all of its capital stock, shall possess assets sufficient to maintain with the superintendent its deposit theretofore made with him, not less than the entire liabilities of the corporation including the net values of its outstanding contracts computed according to the standard adopted by the corporation under the provisions of Section 636, General Code, and also all funds, contingent reserves
 
 *345
 
 and surplus save so much of the latter as shall have been appropriated or paid under such plan.
 

 Section 9364-2 makes provision for the acquisition of stock in the carrying out of any plan of mutualization and the holding of such shares in trust until all the shares shall have been acquired.
 

 Section 9364-2a provides for protection of the rights of dissenting shareholders and for the abandonment of the plan at any time prior to the time of the vote of the policyholders.
 

 Section 9S64-2& provides for the appointment of trustees to hold any shares of the capital stock acquired under the plan as provided in Section 9364-2, and further provides that existing suits, rights, or contracts of the company shall not be affected by the plan.
 

 Section 9364-3 provides for the officers and directors after a stock life insurance company has been converted into a mutual company.
 

 Section 9364-4 provides how and by whom the corporate powers shall be exercised, including the qualifications of persons competent to be elected directors or trustees.
 

 Section 9364-5 provides for the terms of the directors or trustees.
 

 Section 9364-6 provides for meetings of the directors or trustees. -
 

 Section 9364-7 grants authority for selection by the directors of an executive committee.
 

 Section 9364-8 provides for a code of regulations of a mutualized corporation, what the code shall contain, the manner of voting by the policyholders and the method of amending or repealing such code.
 

 This outline of the act is sufficient to demonstrate that the General Assembly has clearly defined the legislative policy-for mutualization.
 

 The act is a part of the Insurance Code of Ohio (Sections 9339 to 9642, both inclusive, General Code).
 

 
 *346
 
 Re.verting to the power and duty of the superintendent under the act, it is manifest that after the plan of mutualization shall have been approved by the board of directors, the shareholders-and the policyholders, the plan shall be approved by the superintendent if he finds that the financial condition of the company is such as to satisfy the requirements of the act.
 

 By the provisions Of Sections 617 to 673, both inclusive, General Code, the superintendent is granted wide latitude and authority in supervising the operations of insurance companies. It is his mandatory duty to see that the laws relating to insurance companies are duly executed and enforced (Section 617). He is granted power to administer oaths and compel the attendance of witnesses to testify upon any matter relating to insurance (Section 623); he may at any time examine the financial affairs of any insurance company (Section 625); and he may take charge of the property of any insurance company when insolvent or in unsound financial condition (Section 628-2).
 

 The provisions of the insurance code are for the protection of the shareholders, the policyholders and the public at large, and no insurance company should be or is exempt from these salutary provisions.
 

 The act, here in question, makes the approval by the superintendent a condition precedent to the mutualization plan becoming effective, in order to insure the policyholders against any possibility of financial disaster by the adoption of such plan. It seems to us that an attack by a policyholder upon a statute obviously enacted for his benefit and protection presents an anomaly.
 

 In
 
 Fassig
 
 v.
 
 State, ex rel. Turner, Atty. Genl., supra,
 
 paragraph two of the syllabus reads as follows:
 

 “The line which separates power to make laws from power to interpret and apply laws is not exactly defined. The Legislature cannot confer upon tribunals,
 
 *347
 
 other than courts, powers which are strictly and conclusively judicial. But in providing for the enforcement of its enactments, it may clothe administrative officers with power to ascertain whether certain specified facts exist, and thereupon to act in a prescribed manner, without delegating to such officers legislative or judicial power within the meaning of the Constitution. ’ ’
 

 See 16 Corpus Juris Secundum, 399, Section 140; 8 Ohio Jurisprudence, 318, Section 214;
 
 Cincinnati W. & Z. Rd. Co.
 
 v.
 
 Commrs. of Clinton County, supra; Green
 
 v.
 
 State Civil Service Commission, supra; State, ex rel. Campbell, Pros. Atty.,
 
 v.
 
 Cincinnati Street Ry. Co.,
 
 97 Ohio St., 283, 119 N E., 735;
 
 Matz, Admr.,
 
 v.
 
 J. L. Curtis Cartage Co.,
 
 132 Ohio St., 271, 7 N. E. (2d), 220;
 
 Panama Refining Co.
 
 v.
 
 Ryan,
 
 293 U. S., 388, 79 L. Ed., 446, 55 S. Ct., 241;
 
 A. L. A. Schechter Poultry Corp. v. United States,
 
 295 U. S., 495, 79 L. Ed., 1570, 55 S Ct., 837, 97 A. L. R., 947.
 

 It seems clear, both upon reason and authority, that while the General Assembly may not delegate the exercise of its discretion as to what the law shall be, it may confer discretion in the administration of the law.
 

 In the consideration of this act, we think that it must be read and construed in the light of the provisions of Part First, Title III, Division II, Chapter 2 of the General Code, entitled “Superintendent of Insurance” (Sections 617 to 673, both inclusive).
 

 These companies, if and when mutualized, will remain domestic life insurance corporations subject to the provisions of law applicable thereto and will remain subject to the supervision of the superintendent to the same extent as before mutualization.
 

 The superintendent by the terms of the act in question is granted authority fo determine, from an examination of the books of the company at the time his approval is requested, whether the company is in such
 
 *348
 
 financial condition that the conversion may be consummated without loss or harm to its creditors, its shareholders or its policyholders.
 

 The act makes it the duty of the superintendent to ■determine whether certain specific facts exist, to wit, whether the company, after deducting the aggregate •sum to be paid for the outstanding shares of the capital stock, shall be possessed of assets sufficient to maintain its deposit with him as provided by law, not less than the entire liabilities of the company including the net value of its outstanding contracts computed according to its previously adopted standard as provided by law, and also all funds, contingent reserves and surplus except so much of the surplus as shall have been appropriated to purchase the outstanding shares •of the capital stock.
 

 If he finds the company has sufficient assets as required by the act he shall give his approval, otherwise he shall reject the plan.
 

 We think that the act definitely defines the legislative policy; that it does establish standards for the guidance of the superintendent in approving or rejecting the plan; and that it does not delegate legislative power, within the meaning of the Constitution.
 

 The contention that the act takes effect upon the approval of the superintendent is without merit The mutualization takes effect upon his approval, but the act took effect in the manner and at the time for the taking effect of legislative acts as provided by the Constitution.
 

 From what has been said it follows that the act is not unconstitutional and void upon its face.
 

 We will now direct our attention to the second phase of the controversies — that the act is unconstitutional and void because of the operative effect thereof as applied to the respective plans.
 

 In the
 
 Belden case
 
 no meeting has been held, as yet,
 
 *349
 
 for the purpose of the policyholders voting to approve- or reject the plan and in neither case has the plan ever been submitted to or approved by the superintendent. For aught we know from the record neither proposed plan may ever be consummated.
 

 In the
 
 Belden case
 
 the directors and shareholders-have it in their power to rescind the plan and in both cases the superintendent may reject the plans.. These facts alone form a sufficient basis to disapprove the claim of unconstitutionality because of operative-effect of the act as applied to the respective plans.
 

 There is in each case however a more cogent reason, for this conclusion.
 

 As has been stated these cases were disposed of in the Court of Appeals upon general demurrers to the-answers.
 

 Where, as here, an attack is made upon an act which is valid on its face, upon the ground that, as applied to a given state of facts, it is invalid, the burden rests-upon the party making such attack to present clear and convincing evidence of a presently existing state of facts, which makes such act unconstitutional and void when applied thereto. See Nashville,
 
 C. & St. L. Ry. Co.
 
 v. Walters,
 
 Commr.,
 
 294 U. S., 405, 79 L. Ed., 949, 55 S. Ct., 486.
 

 By the general demurrers all facts well pleaded in the answers are admitted as true. In the
 
 Belden case
 
 the answer of Union Central avers that as of December 31, 1940, its assets amounted to $413,679,712; that $398,884,078.64 is allocated to the owners of policies in the form of reserves, in which the shareholders have no interest, leaving approximately $14,800,000 in the capital and surplus accounts. If the proposed plan should become effective, and $3,125,000 is paid for the-purchase of all of the shares of the capital stock, the policyholders would become the owners of the company including the approximate $11,675,000 still re
 
 *350
 
 maining in the capital and surplus accounts after payment of the $3,125,000 purchase price for all the shares.
 

 The answer further avers that as of December 31, 1942, its total assets were about 456 million dollars which in all probability would increase the amount of reserves as' well as the capital and surplus accounts.
 

 Whether the conversion of Union Central or Ohio National from a stock to a mutual company is beneficial to the policyholders is not for us to say; that question, under the provisions of the act, is left to the policyholders to decide, and whether the payment of the price, as stipulated in the respective plans, for the outstanding shares of the capital stock is inequitable to the policyholders or would involve the financial structure of the companies is a question for decision by the superintendent, at such time as the plan is submitted to him for approval.
 

 The only question before the court is whether upon the record as presented we can say that the obligation of the contracts between the policyholders and Union Central or Ohio National are impaired or that the policyholders are deprived of their property without due process of law.
 

 We have little difficulty with the proposition that there is no such special state of facts presented as would warrant the conclusion that the act is unconstitutional as applied to the Union Central plan.
 

 The
 
 Koplin et al.
 
 v.
 
 Ohio National case
 
 is unlike the
 
 Belden et al.
 
 v.
 
 Union Central case
 
 in that (1) ECoplin is the owner of a nonparticipating policy; and (2) by the plan the board of directors is authorized to purchase “from time to time as funds are available” the stock of its shareholders at a price of $40 per share.
 

 The claim that Koplin has any vested right in the organizational structure of Ohio National cannot be sustained either in logic or by authority.
 

 
 *351
 
 In the case of
 
 Ohio, ex rel. Natl. Life Assn.,
 
 v.
 
 Matthews, Supt. of Ins.,
 
 58 Ohio St., 1, 49 N. E., 1034, 40 L. R. A., 418, Judge Bradbury used this language which is especially applicable to the position of a nonparticipating policyholder:
 

 “The ultimate power to manage its affairs is lodged in its stockholders to the entire exclusion of its policyholders, for the right to attend corporate meetings as well as to elect its officers is vested solely in the former; whatever net profits may accrue from its business will ultimately go to its stockholders, the policyholders having no interest therein; the rights of the latter being measured by the contract evidenced by their respective policies. It is true that, in an agreed statement of facts submitted to the court, it is stated that: ‘The plaintiff pays a dividend of six per cent per annum on the amount of stock actually paid into its treasury; the same being paid out of moneys raised and used by it for expense purposes, and the amount thereof being $3,000 per annum.’ We do not see how this bears upon the question of the character or nature of the concern. There is nothing in its charter to prevent the payment of a larger dividend if the earnings of the company at any time would warrant it, or to prevent its setting aside or investing its accumulation in any way it may choose for the eventual benefit of its stockholders.”
 

 Under the plan in controversy in the
 
 Koplin case
 
 the shares of stock are to be acquired from time to time as funds are available.
 

 Section 9364-26 specifically provides in part:
 

 “* * * Neither the retirement of its capital stock nor the amendment of its articles of incorporation, as herein provided, shall affect existing suits, rights or contracts of the corporation.
 
 * * *”
 

 By virtue of the provisions of Section 617, it is the mandatory duty of the superintendent to see that the
 
 *352
 
 law relating to insurance, including the above-quoted part of Section 93G4-2&, is duly executed and enforced.
 

 We assume that the superintendent will do bis full duty, and if that be true, these policyholders will not be deprived of their property without due process of law, nor will the obligation of their contracts be impaired.
 

 In the case of
 
 State, ex rel. Herbert,
 
 v.
 
 Ferguson, Auditor,
 
 142 Ohio St., 496, 52 N. E. (2d), 980, this court by a unanimous decision held ‘ ‘ constitutional questions will not be decided until the necessity for a decision arises on the record before the court.”
 

 The Court of Appeals entered final judgment in the
 
 Belden case
 
 in favor of Union Central and that judgment should be and is hereby affirmed.
 

 In the
 
 Koplin case
 
 the Court of Appeals reversed the judgment of the Court of Common Pleas and remanded the cause to that court for further proceeding according to law. We think the Court of Appeals should have rendered final judgment also in favor of Ohio National. The plan of mutualization in the
 
 Koplin ■case
 
 not having been submitted to or approved by the superintendent, it would be impossible for Koplin to make a record based upon any presently existing state •of facts calling for a decision upon the constitutionality of the act on the basis of its operative effect. In the
 
 Koplin case,
 
 final judgment will be entered in favor of Ohio National.
 

 Judgments accordingly.
 

 Wbygandt, C. J., Matthias, Hart, Zimmerman, Williams and Turner, JJ., concur.