112

THE STATE, EX REL. GRANT ET AL., *v.* BROWN, SECY. OF STATE.

[Cite as State, ex rel. Grant, v. Brown
(1974), 39 Ohio St. 2d 112.]

(No. 72-659—Decided July 10, 1974.)

*Mr. Douglas M. Mansfield,* for relators.
*Mr. William J. Brown,* attorney general, and *Mr. Michael DeAngelo,* for respondent.

*Per Curiam.* On August 9, 1972, relators tendered articles of incorporation for a nonprofit corporation to respondent, Secretary of State. He refused to accept those articles because:

"* * * this office finds that acceptance of the proposed articles of incorporation for Greater Cincinnati Gay Society, Inc. appear to be contrary to public policy since homosexuality as a 'valid life style' has been and is currently defined by statute as a criminal act."

On August 24, 1972, a complaint, styled State of Ohio, ex rel. Greater Cincinnati Gay Society, Inc., v. Brown, Secretary of State, was filed in this court asking for a writ of mandamus to require the Secretary of State to accept, approve, file and record those articles of incorporation.

Respondent filed a motion to dismiss, arguing that relator was improperly denominated in the complaint as a corporation; that its avowed purpose was, on its face, contrary to public policy; and that it might be advocating

furtherance of its objectives by means other than legal.

This court overruled the motion to dismiss, and allowed relator to amend its complaint by changing the name of relator.

In the amended complaint, relators argue that "there is no statute whatsoever which prohibits the state of being a homosexual or promoting homosexuality as a valid life style." They argue further that nowhere in the articles of incorporation can a purpose to engage in, or urge others to engage in, criminal acts be found. Finally, relators argue that R. C. Chapter 2907 of the new Criminal Code, effective January 1, 1974, dealing with sexual offenses, shows no specific animus against the activities of homosexuals so that promoting homosexual conduct cannot be said to be contrary to public policy in Ohio. The subject, as a whole, invites more extensive discussion, but we forbear.

The Secretary of State refused to accept the articles of incorporation pursuant to R. C. 1702.07(A), which, in pertinent part, provides:

"When articles of incorporation and other certificates relating to the corporation are filed with the Secretary of State, he shall, *if he finds that they comply* with the provisions of Sections 1702.01 to 1702.58, inclusive, of the Revised Code, endorse thereon his approval * * *." (Emphasis added.)

The Secretary of State found that the articles of incorporation, as tendered, did not comply with R. C. 1702.03, which provides:

"A corporation may be formed for any purpose or purposes for which natural persons *lawfully* may associate themselves * * *." (Emphasis added.)

It is the opinion of this court that the statutes (R. C. 1702.01 to 1702.58) give the Secretary of State discretion in determining which articles of incorporation he will accept.

Although homosexual acts between consenting adults are no longer statutory offenses since the new Criminal Code came into effect, there is still reason for denying the writ. We agree with the Secretary of State that the promo-

tion of homosexuality as a valid life style is contrary to the public policy of the state.

*Writ denied.*

CORRIGAN and CELEBREZZE, JJ., concur.
HERBERT and P. BROWN, JJ., concur in the judgment.
O'NEILL, C. J., STERN and W. BROWN, JJ., dissent.

HERBERT, J., concurring in judgment. I concur in the judgment, but disagree with the language in the opinion which suggests that unfettered discretion reposes in the Secretary of State. Furthermore, it should be pointed out that a major weakness in the dissent lies in its conclusion that an absence of statutory law always establishes the presence of a definitive public policy.

P. BROWN, J., concurs in the foregoing concurring opinion.

STERN, J., dissenting. As I read the majority opinion, it is henceforth unlawful in this state for any group of persons to attempt, in any fashion, to persuade the public that homosexuality represents a valid, alternative life style.[1] Because I believe this position to have no basis in law, I dissent.

The majority is factually inaccurate in stating that respondent's decision was based upon public policy grounds. In his final brief, filed on November 5, 1973, in this court, the Secretary of State explained:

"Respondent did state, when giving a reason for not

---

[1] The last sentence of the majority opinion states: "We agree with the Secretary of State that the promotion of homosexuality as a valid life style is contrary to the public policy of the state." The purpose clause tendered by relators, however, reads, in part: "To promote *acceptance* of homosexuality as a valid life style * * *." (Emphasis added.) A fair reading of relators' enunciated purpose indicates that they hope to foster community acceptance of *themselves*, as individuals, and not that they seek to convert the community to homosexuality, as suggested by the majority.

accepting and filing relator's articles of incorporation, that they appear to be contrary to public policy. *This does not mean, however, that the Secretary of State is attempting to dictate what is contrary to public policy. The use of that term was merely another way of saying that relator's purpose clause could logically be interpreted as encouraging the commission of unlawful acts (as established by the Legislature)."* (Emphasis added.)

Specifically, according to respondent, he is concerned with relators' potential violations of R. C. 2905.44, which prohibited sodomy, and R. C. 2905.30, which prohibited the solicitation of acts of sex perversion.

It is clear, at least to me, that as of January 1, 1974, when Amended Substitute House Bill 511 became effective, respondent's objections to relators' articles of incorporation are moot.[2] Sodomy, and solicitation of acts of sex perversion, are no longer crimes in this state. The General Assembly has seen fit to decriminalize all private sexual activity between consenting adults, and it is wholly unreasonable and improper to infer from the general language of relators' purpose clause any intent to violate any provision in the Criminal Code.

What is most disturbing about the majority opinion, however, is that it confers broad discretionary power upon the Secretary of State, and at least implies that the office of the Secretary of State is a vehicle for formulating and implementing state public policy. Both of these notions are in direct conflict with the long-standing law found in paragraph one of the syllabus in *State, ex rel., v. Taylor* (1896), 55 Ohio St. 61, 44 N. E. 513, as follows:

"The duty of the Secretary of State, on presentation

---

[2]It is interesting to note that, even prior to January 1, 1974, all the attorneys involved in this litigation were of the opinion that relators' articles of incorporation should be accepted for filing. The ultimate responsibility, however, rests with the Secretary of State who has consistently maintained his position that "the articles of incorporation for Greater Cincinnati Gay Society, Inc. will only be filed if I am ordered to do so by the Supreme Court of Ohio.

of articles of incorporation and tender of proper fees, to file and record such articles, and upon request issue a duly certified copy thereof, is controlled by the statutes of the state, and not by the discretion of the officer.''

The proposition is widely accepted that a state administrative officer, charged with the responsibility of passing upon articles of incorporation, exercises limited discretion. 1 Fletcher, Cyclopedia Corporations, 618, Section 156; 18 American Jurisprudence 2d 587, Corporations, Section 40; 18 Corpus Juris Secundum 443, Corporations, Section 59. As pertains to Ohio, this is so because ''Section 2, Article XIII of the Constitution grants full and complete authority to the General Assembly to provide, by general laws, for the formation of corporations * * *.'' Paragraph two of the syllabus in *Belden* v. *Union Central Life Ins. Co.* (1944), 143 Ohio St. 329, 55 N. E. 2d 629. R. C. Chapter 1702 constitutes a delegation of that constitutionally-founded authority to the Secretary of State. Unlike the majority, who perceive R. C. 1702.01 to 1702.58, inclusive, to grant discretionary power, I would rather believe that the extistence of 58 *distinct statutes* serves more to circumscribe and limit whatever discretionary authority the Secretary of State does possess.

There can be no doubt that R. C. 1702.07(A) and 1702.03 repose in respondent the responsibility for evaluating the lawfulness of the purposes of a proposed corporation. The word ''lawful'' has many definitional nuances, and is often contrasted with the word ''legal.'' Black's Law Dictionary (4 Ed.), 1032, comments:

''The principal distinction between the terms 'lawful' and 'legal' is that the former contemplates the substance of the law, the latter the form of the law. To say of an act that it is 'lawful' implies that it is authorized, sanctioned, or at any rate not forbidden, by law. To say that it is 'legal' implies that it is done or performed in accordance with the forms and usages of law, or in a technical manner. * * * '' See, also, 24A Words and Phrases 39 *et seq.*

Hence, in order to do business as a nonprofit corpora-

tion in this state, all incorporators must first comply with the specific procedural requirements of R. C. Chapter 1702, which are "legal" prerequisites, and then must state a purpose that is not contrary to general statutes, which is the "lawful" prerequisite intended by R. C. 1702.03.

The majority's conclusion, *i. e.*, that the Secretary of State may refuse to accept for filing certain articles of incorporation on public policy grounds, assumes that the word "lawful," as used in R. C. Chapter 1702, encompasses public policy considerations. As I have stated, the large body of law elsewhere, and the specific case law in this state, views the role of the Secretary of State as being largely ministerial However, even if one were to accept the conclusion of the majority, several problems arise.

The Secretary of State, in discharging his duties pursuant to R. C. Chapter 1702, cannot be viewed as the original spokesman or interpreter of state public policy. Neither his office, nor his assigned responsibilities permit him this initiative. If the Secretary of State is to act upon policy considerations at all, those considerations must stem from discernible and particularized pronouncements by the people, through their constitutions, legislators, or judicial officers. See *Kintz* v. *Harriger* (1919), 99 Ohio St. 240, 246, 124 N. E. 168.

Since the majority has declared relators' avowed purpose to be against public policy, one must assume that their decision is based upon considerations to be found in our consitutions, our statutes, or our judicial pronouncements. The Ohio Constitution displays no preference for sexual life style. Both the Ohio Constitution (Section 11, Article I) and the United States Constitution (First Amendment) do contain, however, a bias in favor of permitting people to speak their minds and promote their causes in a peaceful manner.

The recent amendments to R. C. Title 29, which decriminalize all private sexual activity between consenting adults, indicate an express public policy to tolerate the existence of different sexual life styles in this state. Insofar as the

Criminal Code in Ohio is now concerned, no distinction is drawn between heterosexual and homosexual activities.

Past judicial pronouncements of this court also fail to support the majority's public policy pronouncement. In fact, nowhere in the recorded decisions of the Ohio Supreme Court has any justice ever used the term "homosexual" or "homosexuality,"[a] let alone discuss the policy implications of such a life style. Thus, the cryptic comment that "the subject, as a whole, invites more extensive discussion, but we forbear," leaves this reader without a hint of the underlying rationale that has prompted the majority decision.

Under the law of this state, as I perceive it, this court is duty-bound to allow respondents the opportunity to associate for the purpose of fostering acceptance of their freely-chosen life style. The writ of mandamus should be allowed.

WILLIAM B. BROWN, J., dissenting. I concur in the dissenting opinion of Justice Stern. If articles of incorporation are filed in legal form following all legal requirements in the Secretary of State's office under R. C. Chapter 1702, it is his duty to accept them. He has only a ministerial duty to record the same. If for any reason the articles of incorporation are illegal or against public policy, the responsibility devolves upon the Attorney General of Ohio to bring a quo warranto action to dissolve the corporation.

---

[a]Computerized research, using LEXIS, discloses this fact.