COMFORTER OF THE AFFLICTED CHILDREN'S CENTER, INC.,
APPELLEE, *v.* BROWN, ATTORNEY GENERAL, APPELLANT.

[Cite as Children's Center, Inc., v. Brown (1980),
67 Ohio App. 2d 1.]

2

*Messrs. Herschel, Kuhnle & Accettola, Mr. Henry B. Herschel* and *Mr. Paul E. Accettola,* for appellee.

*Mr. William J. Brown,* attorney general, and *Mr. John W. Clark, III,* for appellant.

BROWN, J. This is an appeal from the judgment of the Court of Common Pleas of Lucas County which reversed an adjudication order of the Attorney General of Ohio. We affirm.

Appellee (appellant in the Court of Common Pleas), Comforter of the Afflicted Children's Center, Inc. (hereinafter appellee), on November 1, 1976, was issued a license by appellant (appellee in the Court of Common Pleas), William J. Brown, Attorney General of Ohio, to conduct bingo games in the state of Ohio. This license was valid through December 31, 1977.

Appellee was (and is at this time) conducting its bingo sessions twice each calendar week at 2458 Tremainsville Road, Toledo, Ohio. Appellee leased the premises from an entity known as Trianon Hall. Trianon Hall is not the owner of the premises, but leases the premises from Adam and Delores Najarian, the owners. Another organization, St. Patrick's Historic Catholic Church, was also (and is at this time) conducting two bingo sessions each calendar week at 2458 Tremainsville Road, Toledo.

During the operation of appellee's bingo sessions, Mr. Gene Jeric operated a concession stand in the bingo hall, at least through the 1978 calendar year. There was no indication, on any application filed by appellee, that Jeric was not a volunteer with respect to appellee's bingo operation; this was only discovered by the Attorney General through investigation. Appellee permitted Jeric to retain all profits obtained from the operation of the concession stand during appellee's bingo sessions. Jeric also paid two employees to work at the concession area during appellee's bingo sessions.

In December of 1977, appellee submitted an application for a 1978 bingo license. The Attorney General (the state licensing authority) rejected the application. He stated seven reasons for his decision.

Appellee requested a hearing on the license rejection, and one was held on December 18, 1978. Counsel for the Attorney General and the appellee argued their positions and introduced certain exhibits in the record at this hearing.

During the hearing, the Attorney General stated that there were two key reasons why the application had been rejected. The first reason was that appellee allowed a concession stand to be operated for profit during the bingo sessions. It was urged that this was a violation of R. C. 2915.09(C),[1] which states that a "bingo game operator" shall not receive any compensation; R. C. 2915.01(U)[2] defines the term "bingo game operator" to include individuals who serve refreshments at a bingo game site.

The second reason was that appellee operated two bingo games per week at 2458 Tremainsville Road and that St. Patrick's Historic Catholic Church also operated two bingo games per week at that location. The Attorney General argued that this violated R. C. 2915.09(A)(3),[3] which provides that no more than two bingo sessions per week are allowed to be held at a single location. The Attorney General also asserted that there was no compliance with the "grandfather clause," R. C.

---

[1] R. C. 2915.09(C) reads as follows: "A bingo game operator shall not receive or accept any commission, wage, salary, reward, tip, donation, gratuity, or other form of compensation, directly or indirectly, regardless of the source, for operating a bingo game or providing other work or labor at the site of the bingo game."

[2] R. C. 2915.01(U) provides as follows:

" 'Bingo game operator' means any person, except security personnel, who performs work or labor at the site of a bingo game including, but not limited to, collecting money from participants, handing out bingo cards or objects to cover spaces on the bingo cards, selecting from a receptacle the objects that contain the combination of letters and numbers that appear on the bingo cards, calling out the combinations of letters and numbers, distributing prizes to the winner of the bingo game, and *serving refreshments*." (Emphasis added.)

[3] R. C. 2915.09(A)(3), in pertinent part, provides as follows:

" * * * A person who is not a charitable organization shall not lease premises that he owns, leases, or otherwise is empowered to lease to more than one charitable organization per calendar week for conducting bingo games on the premises. In no case shall more than two bingo sessions be conducted on any premises in any calendar week."

2915.09(D),[4] which allows the conducting of four bingo sessions per calendar week at one location, provided the owner enters into a written lease, as lessor, before December 6, 1977, with a charitable organization, as lessee. The lease agreement in the case at bar appears to have been signed on December 2, 1977, with an effective date of January 1, 1978. In addition, an equipment rental agreement between appellee and St. Patrick's Historic Catholic Church was signed and dated on December 12, 1977.

On December 28, 1978, the hearing examiner made findings of facts and conclusions of law. He recommended that the application be rejected. The Attorney General approved the examiner's recommendation and the license was denied. Appellee (Comforter of the Afflicted Children's Center, Inc.) appealed the order to the Court of Common Pleas of Lucas County, which reversed the Attorney General's order. The Attorney General then appealed to this court.

The Attorney General has advanced four assignments of error.[5]

---

[4] R. C. 2915.09(D), in pertinent part, provides as follows:

"Notwithstanding the provisions of division (A)(3) of this section, * * * a person who is not a charitable organization that has prior to December 6, 1977, entered into written agreements for the lease of premises he owns to charitable organizations for the conducting of more than two bingo sessions per calendar week on the premises, may continue to lease said premises to those charitable organizations, provided that no more than four sessions are conducted per calendar week, provided that the lessor organization or person has notified the attorney general in writing of the organizations that will conduct the sessions and the days of the week and the times of the day on which the sessions will be conducted, provided that the initial lease entered into with each organization that will conduct the sessions was filed with the attorney general prior to December 6, 1977, and provided that each organization that will conduct the sessions was issued a license to conduct bingo games by the attorney general prior to December 6, 1977."

[5] The assignments of error are as follows:

"1. The Court of Common Pleas erred in holding that, subsequent to December 31, 1977, appellee's conduct of two bingo sessions per calendar week at which another organization was licensed to conduct and was conducting bingo sessions each week, in violation of R. C. 2915.09(A)(3) and without appellee having qualified for the narrow exception provided therefor in R. C. 2915.09(D), was not grounds for rejection of appellee's application for a 1978 bingo license.

"2. The Court of Common Pleas erred in holding that the 'unconstitutional' status of section 2915.09(D) of the Ohio Revised Code, as applied to appellee, in any way serves to legitimatize the conduct of two bingo sessions per calendar week by appellee on premises owned by a noncharitable lessor when another organization is conducting bingo sessions each week at the same location.

These assignments of error are not well taken for the following reasons.

The trial court based its decision on two grounds. With respect to the concession stand issue, the court ruled that there was no evidence that appellee deliberately attempted to violate the law and that the denial of the application for an alleged violation of R. C. 2915.09(C) was improper. With regard to the two-game-per-week limitation, the trial court held that R. C. 2915.09(A)(3), as modified by the "grandfather clause," R. C. 2915.09(D), and as applied to appellee, was unconstitutional. The court reached this conclusion because the General Assembly did not provide appellee with reasonable notice of the amendments to the Charitable Bingo Act in a manner calculated to reach the appellee before its effective date (December 15, 1977).[6]

The requirements of R. C. 2915.09(D) had to be met on December 6, 1977, nine days before it became effective, *i.e.*, on December 15, 1977. See *Belden* v. *Union Central Life Ins. Co.* (1944), 143 Ohio St. 329, at paragraph four of the syllabus.

We agree with the decision of the trial court. The record reveals that appellee has persistently tried to comply with R. C. Chapter 2915, which the trial court correctly concluded was "less than clear with respect to the provisions concerning concessions at Bingo Sessions."[7]

---

"3. The Court of Common Pleas erred in holding that the arrangment [*sic*] made by appellee for a non-charitable person to operate a concession stand at appellee's bingo sessions and retain all profits therefrom, in violation of R. C. 2915.09(A)(2), was not grounds for rejection of the application for a 1978 bingo license when appellee was willing to discontinue the prohibited practice.

"4. The Court of Common Pleas erred in holding that the arrangment [*sic*] made by appellee for a non-charitable person to operate a concession stand at appellee's bingo sessions and pay his employees thereat, in violation of R. C. 2915.09(B)(1) and (C) was not grounds for rejection of the application for a 1978 bingo license."

[6] The trial court made the following apt observation concerning this lack of reasonable notice of the amendments to the Charitable Bingo Act:

"However, all parties would agree and the court is persuaded that appellant [appellee herein] was unable to meet the prerequisites for qualification for Grandfather treatment because of the lack of any notice reasonably calculated to reach appellant. Such lack of notice does not render the Grandfather clause as written unconstitutional but does render its application upon the appellant unconstitutional as a violation of the Due Process Clause as embodied in the Fifth and Fourteenth Amendments of the United States Constitution and the analogous clauses of the Constitution of the State of Ohio."

[7] In addition, the hearing officer stated, "that the legislature has been less than

Under these facts, it would be a denial of procedural due process to deny a license to appellee.

Once the state established a system for the distribution of bingo licenses, the Due Process Clause imposed a requirement of fundamental fairness in the treatment of the various applicants. That requirement was not met in this case.

On consideration thereof, this court finds substantial justice has been done the party complaining and the judgment of the Court of Common Pleas of Lucas County is hereby affirmed.

*Judgment affirmed.*

POTTER, P. J., and CONNORS, J., concur.

---

clear with respect to the provisions concerning concessions at bingo sessions," and the trial court agreed with that finding.