OPINION
{¶ 1} This prosecutor's appeal challenges the decision of the Mahoning County Court of Common Pleas to dismiss a criminal charge of domestic violence on the grounds that the criminal statute violated the recently adopted amendment to the Ohio Constitution known as the "Defense of Marriage" amendment. Appellee was charged with committing domestic violence against his girlfriend. The trial court ruled that the domestic violence statue cannot be used to prosecute an unmarried, "person living as a spouse," because the "Defense of Marriage" Amendment prohibits the state from creating or recognizing the legal status of unmarried individuals that approximates the legal status of married couples. This Court has recently ruled that the statute allowing non-married couples to obtain a domestic violence civil protection order (DVCPO) does not run afoul of the "Defense of Marriage" Amendment because the statute does not attempt to approximate the legal status of marriage. For the same reason, the criminal domestic violence statute is constitutional even when used to prosecute unmarried but cohabitating persons because no legal status equivalent to marriage is created in the prosecution of the crime. The judgment of the trial court is therefore reversed, and the case is remanded for further proceedings.
 PROCEDURAL HISTORY {¶ 2} On April 29, 2004, Appellee was indicted on one count of domestic violence, a violation of R.C. § 2919.25(A), being a fourth degree felony. Appellee's counsel filed a motion to dismiss the indictment on April 21, 2005. The basis for the requested dismissal was that the criminal statute was unconstitutional with respect to cohabiting but unmarried couples because it violated the Defense of Marriage Amendment, Article XV, Section 11 of the Ohio Constitution. The state filed a response on April 21, 2005. Prior to the court's ruling, the parties stipulated that they had a boyfriend and girlfriend relationship, were not married, but were living together at the time of alleged crime.
 {¶ 3} The trial court held a hearing on the motion on August 29, 2005. The court dismissed the charge on December 19, 2005, on the grounds that the statute was unconstitutional as applied. This timely prosecutor's appeal followed.
 ASSIGNMENT OF ERROR {¶ 4} "OHIO'S DOMESTIC VIOLENCE STATUTE IS CONSTITUTIONAL IN LIGHT OF OHIO'S DEFENSE OF MARRIAGE ACT, AND DEFENDANT-APPELLEE'S INDICTMENT IS LEGAL AND CONSTITUTIONAL."
 {¶ 5} R.C. § 2945.67 grants a prosecutor the right to appeal the dismissal of all or any part of a criminal indictment, complaint or information. If the dismissal is based on a matter of law, it is reviewed de novo on appeal. State v. Musick (1997), 119 Ohio App.3d 361,367, 695 N.E.2d 317. A determination of the constitutionality of a statute or ordinance is a question of law, reviewed de novo. City ofAkron v. Callaway, 162 Ohio App.3d 781, 2005-Ohio-4095, 835 N.E.2d 736, at ¶ 23; Andreyko v. City of Cincinnati, 153 Ohio App.3d 108,2003-Ohio-2759, 791 N.E.2d, 1025, at ¶ 11. De novo review is done without deference to the lower court's decision. See Ohio Bell Tel. Co. v. Pub.Util. Comm. of Ohio (1992), 64 Ohio St.3d 145, 147, 593 N.E. 2d 286.
 {¶ 6} In Ohio, it is well-settled that legislative enactments are presumed to be constitutional. State ex rel. Dickman v. Defenbacher
(1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59, paragraph one of the syllabus; see also R.C. 1.47(A). The Ohio Supreme Court has stated, "A regularly enacted statute of Ohio is presumed to be constitutional and is therefore entitled to the benefit of every presumption in favor of its constitutionality. This court has held enactments of the General Assembly to be constitutional unless such enactments are clearly unconstitutional beyond a reasonable doubt." Id. at 147. When construing legislative enactments, the courts are bound to avoid an unconstitutional construction if it is reasonably possible to do so.Co-Operative Legislative Committee v. Public Util. Comm. (1964),177 Ohio St. 101, 202 N.E.2d 699. Accordingly, where constitutional questions are raised, courts will liberally construe a statute to save it from constitutional infirmities. Desenco, Inc. v. Akron (1999),84 Ohio St.3d 535, 538, 706 N.E.2d 323.
 {¶ 7} A statute may be challenged on constitutional grounds in two ways: (1) that the statute is unconstitutional on its face, or (2) that it is unconstitutional as applied to the facts of the case. Harrold v.Collier, 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165, ¶ 37, citingBelden v. Union Central Life Ins. Co. (1944), 143 Ohio St. 329,55 N.E.2d 629, paragraph four of the syllabus. To mount a successful facial challenge, the party challenging the statute must demonstrate that there is no set of facts or circumstances under which the statute can be upheld. Id., citing United States v. Salerno (1987), 481 U.S. 739, 745,107 S.Ct. 2095, 95 L.Ed.2d 697.
 {¶ 8} The rules employed in statutory construction also apply to the construction of constitutional provisions. State v. Jackson,102 Ohio St.3d 380, 2004-Ohio-3206, 811 N.E.2d 68. The intent of the framers of the constitutional provision is controlling. Id. "In the interpretation of an amendment to the Constitution the object of the people in adopting it should be given effect; the polestar in the construction of constitutional, as well as legislative, provisions is the intention of the makers and adopters thereof." Castleberry v. Evatt (1946),147 Ohio St. 30, 67 N.E.2d 861, paragraph one of the syllabus.
 {¶ 9} This Court has already ruled in two earlier cases that the criminal domestic violence statute, R.C. § 2919.25, is not facially unconstitutional with respect to the "Defense of Marriage" Amendment.State v. McCaslin, 7th Dist. No. 05 CO 44, 2006-Ohio-891 ; State v.Rexroad, 7th Dist. No. 05 CO 36, 2005-Ohio-6790. The McCaslin andRexroad cases were unable to examine whether the domestic violence statute was unconstitutional as applied because there were insufficient facts in the record. In the instant case, though, the parties have stipulated to these basic facts: (1) at the time of the alleged crime, the defendant and the victim were living together as boyfriend and girlfriend; (2) they were not married; and (3) that Appellee is a person living as a spouse as defined by the domestic violence statute.
 {¶ 10} On November 2, 2004, the voters of the State of Ohio approved the "Defense of Marriage" Amendment to the Ohio Constitution. This amendment became effective on December 2, 2004. The Amendment defines marriage in Ohio and states:
 {¶ 11} "Only a union between one man and one woman may be a marriage valid in or recognized by this state and its political subdivisions. This state and its political subdivisions shall not create or recognize a legal status for relationships of unmarried individuals that intends to approximate the design, qualities, significance or effect of marriage."
 {¶ 12} The issue in this appeal is whether the criminal domestic violence statute conflicts in whole or in part with the "Defense of Marriage" Amendment, as applied to the facts of this case. Ohio's Domestic Violence statute, R.C. § 2919.25, provides in pertinent part:
 {¶ 13} "(A) No person shall knowingly cause or attempt to cause physical harm to a family or household member.
 {¶ 14} "(B) No person shall recklessly cause serious physical harm to a family or household member.
 {¶ 15} "(C) No person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member.
 {¶ 16} "(D) (1 ) Whoever violates this section is guilty of domestic violence."
 {¶ 17} The Ohio Domestic Violence statute defines family or household member to include any of the following who live with or have lived with the offender:
 {¶ 18} "(F) As used in this section and sections 2919.251 [2919.25.1] and 2919.26 of the Revised Code:
 {¶ 19} "(1 ) 'Family or household member' means any of the following:
 {¶ 20} "(a) Any of the following who is residing or has resided with the offender:
 {¶ 21} "(i) A spouse, a person living as a spouse, or a former spouse of the offender;
 {¶ 22} "* * *
 {¶ 23} "(2) 'Person living as a spouse' means a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question."
 {¶ 24} It is undisputed that Appellee was not married to the victim at the time of the crime and that he qualifies as a "person living as a spouse" pursuant to this definition.
 {¶ 25} In Gough v. Inner, this Court reviewed whether the statute providing for a DVCPO was in conflict with the Defense of Marriage Amendment. Gough v. Inner, 7th Dist. No. 05 CO 33, 2006-Ohio-3522. We examined R.C. § 3113.31, which allows a trial court to issue a DVCPO if a petitioner can prove, by a preponderance of the evidence, that the petitioner is a family or household member of the respondent and that the petitioner is in immediate and present danger of domestic violence by the respondent. R.C. § 3113.31(D). A person is a "family or household member" if, among other things, he or she is "a person living as a spouse," which is defined as, "a person who is living or has lived with the respondent in a common law marital relationship, who otherwise is cohabiting with the respondent, or who otherwise has cohabited with the respondent within five years prior to the date of the alleged occurrence of the act in question." R.C. §§ 3113.31(A)(3)(ii) and 3113.31 (A)(4). This definition is almost identical to the one used in the criminal domestic violence statute under review in the instant appeal. "Domestic violence" is also defined in R.C. § 3113.13 in the same fashion as it is described in the criminal domestic violence statute.
 {¶ 26} In Gough, after comparing the DVCPO statute and the Defense of Marriage Amendment, we concluded that the two were not in conflict:
 {¶ 27} "After reviewing these statutes and the caselaw, we conclude that R.C. 3113.31 does create or recognize a legal status. The classes of people identified in the statute are the only people who are allowed to file a petition for a DVCPO. Thus, they have a condition, the ability to obtain a DVCPO, recognized in the eyes of the law. R.C. 3113.31, therefore, creates or recognizes a legal status for unmarried individuals. However, this conclusion cannot end our analysis. We must determine whether this legal status approximates marriage. Accordingly, we will examine the design, qualities, significance, and effect of marriage.
 {¶ 28} "'"Marriage" is a status created by operation of law.'Langer v. Langer (1997), 123 Ohio App.3d 348, 353. It is a civil contract, of a peculiar character and subject to peculiar principles, which is designed 'to perpetuate family groups within the larger social entitles [sic] of which each marital unit is a part.' Vrabel v.Vrabel (1983), 9 Ohio App.3d 263, 269; Coleman v. Coleman (1972), 32 Ohio St.2d 155, 161. Marriage ' "involves a personal union of those participating in it of a character unknown to any other human relation.' " In re Soeder's Estate (1966), 7 Ohio App.2d 271, 290, quotingParke v. Parke (1920), 25 Haw. 397.
 {¶ 29} "The law recognizes the special nature of marriage in many ways. For instance, only married couples have the right to a dower interest, R.C. 2103.02; the right to consortium, Anderson v.Brush-Wellman, Inc. (1991), 77 Ohio App.3d 657, 662; the right to spousal support, R.C. 3105.18; intestate succession preferences, R.C.2105.06; testimonial privileges, 2317.02(D); and testamentary property rights, such as electing to take against the will. R.C. 2106.01. In addition, spouses enjoy pension benefits, immigration preferences, tax preferences, health insurance, and conjugal visits. McIntosh at 3, citing Sowald Morganstern, Domestic Relations Law (2002), Sec. 2:1.
 {¶ 30} "In the eyes of the law, marriage is a special status which confers many rights and benefits upon the parties to a marriage. R.C.3113.31 gives unmarried couples the ability to receive a DVCPO. This legal status falls far short of the legal status accorded to marriage. Thus, R.C. 3113.31 does not violate the plain language of Article XV, Section 11 because the legal status it creates does not approximate the design, qualities, significance, or effect of marriage." Id. at ¶ 23-26.
 {¶ 31} The reasoning that we used to affirm the constitutionality of the DVCPO statute applies equally as well to the criminal domestic violence statute. If a legal status is created for cohabiting couples under the criminal domestic violence status, that status does not approximate the many-faceted legal status that accompanies the marital state. As such, the criminal statute does not conflict with the constitutional provision. We note that most other courts that have dealt with this issue have concluded that R.C. § 2919.25, the criminal domestic violence statute, is predicated upon the factual determination of cohabitation, not the legal determination of marriage, and have held that the domestic violence statute is not in conflict with the "Defense of Marriage" Amendment. State v. Goshorn, 4th Dist. No. 05CA2879,2006-Ohio-2755; State v. Newell, 5th Dist. No. 2004CA00264,2005-Ohio-2848; State v. Rodriguez, 6th Dist. No. H-05-020,2006-Ohio-3378; State v. Burk, 8th Dist. No. 86162, 2005-Ohio-6727;State v. Nixon, 9th Dist. No. 22667, 2006-Ohio-72; State v.Rodgers, 10th Dist. No. 05AP-446, 2006-Ohio-1528; State v.Carswell, 12th Dist. No. CA2005-04-047, 2005-Ohio-6547.
 {¶ 32} The Second and Third District Courts of Appeals, though, have both held that the criminal domestic violence statute is unconstitutional as applied to unmarried couples because the statute creates classifications based on the status of a person as married or unmarried, and then protects the unmarried but cohabiting persons as if they had the same legal status as a married couple. State v.McKinley, 3rd Dist. No. 8-05-14, 2006-Ohio-2507; State v. Ward,166 Ohio App.3d 188, 2006-Ohio-1407, 849 N.E.2d 1076 (2nd District). The matter has yet to be resolved by the Ohio Supreme Court, although theCarswell and McKinley cases have been accepted for review.
 {¶ 33} Even though this Court's ruling in Gough did not directly address the precise issue raised in the instant appeal, its reasoning is applicable in the determination as to whether the criminal domestic violence statute conflicts with the Defense of Marriage Amendment. Based on the reasoning in Gough, there is no conflict between the statute and the constitutional provision, and Appellant's assignment of error is sustained. The judgment of the trial court dismissing the domestic violence charge is reversed, and the case is remanded to the trial court for further proceedings according to law and consistent with this Court's Opinion.
Vukovich, J., concurs. DeGenaro, P.J., concurs.