OPINION
{¶ 1} Defendant-appellant, Samuel Koons, appeals from a Columbiana County Municipal Court decision convicting him of one count of domestic violence following a bench trial.
 {¶ 2} Appellant resided with his girlfriend, Brenda Bell, and her two minor sons, Justin and Cody. On April 14, 2006, police responded to a call at their residence. Appellant and the boys had gotten into a fight.
 {¶ 3} Appellant was arrested and charged with domestic violence, a first degree misdemeanor in violation of R.C. 2919.25(A), for assaulting Justin. The case proceeded to a bench trial. The court found appellant guilty as charged and sentenced him to 180 days in jail, 120 days suspended, three years probation, a $750 fine, and costs.
 {¶ 4} Appellant filed a timely notice of appeal on August 4, 2006. The trial court stayed appellant's sentence pending this appeal.
 {¶ 5} Appellant raises a single assignment of error, which states:
 {¶ 6} "OHIO ARTICLE XV, SECTION 11, WHICH FORBIDS THE STATE FROM RECOGNIZING ANY LEGAL RELATIONSHIP BETWEEN UNMARRIED INDIVIDUALS, OVERRULES REVISED CODE 2919.25 AND VOIDS APPELLANT'S CONVICTION."
 {¶ 7} Appellant argues that R.C. 2919.25, the domestic violence statute, is unconstitutional as applied to people who are not married because it violates Article XV, Section 11 of the Ohio Constitution. Article XV, Section 11, otherwise known as the Defense of Marriage Amendment, provides:
 {¶ 8} "Only a union between one man and one woman may be a marriage valid in or recognized by this state and its political subdivisions. This state and its political subdivisions shall not create or recognize a legal status for relationships of unmarried individuals that intends to approximate the design, qualities, significance or effect of marriage."
 {¶ 9} The Defense of Marriage Amendment was passed by the Ohio voters on November 2, 2004. It became effective on December 2, 2004. *Page 2 
 {¶ 10} R.C. 2919.25(A) provides that no person shall cause or attempt to cause harm to a family or household member. The statute then defines family or household member in relevant part as follows:
 {¶ 11} "(a) Any of the following who is residing or has resided with the offender:
 {¶ 12} "(i) A spouse, a person living as a spouse, or a former spouse of the offender;
 {¶ 13} "* * *
 {¶ 14} "(iii) A parent or a child of a spouse, person living as a spouse, or former spouse of the offender, or another person related by consanguinity or affinity to a spouse, person living as a spouse, or former spouse of the offender." R.C. 2919.25(F)(1).
 {¶ 15} The statute then defines "person living as a spouse" as "a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question." R.C.2919.25(F)(2).
 {¶ 16} Appellant contends that the statutory definition of "family or household member" creates a legal relationship between unmarried individuals. He argues because the Defense of Marriage Amendment does not recognize the existence of any relationship between unmarried people who are cohabitating, it is impossible for any unmarried person to be "living as a spouse." Accordingly, appellant argues that it is impossible for a person in an unmarried relationship to ever be guilty of domestic violence for acts against their partner or another living in the same residence.
 {¶ 17} Appellant and the victim's mother were living together as boyfriend and girlfriend at the time of the offense. Because Ohio does not recognize a legal relationship between them, appellant argues that they were not living as spouses. Therefore, he contends that Brenda's son was not a "family or household member" to him. Thus, appellant concludes that the court could not have convicted him of *Page 3 
domestic violence for assaulting Justin.
 {¶ 18} Initially, we should point out that appellant failed to raise the issue of R.C. 2919.25's constitutionality in the trial court. The failure to raise constitutional issues in the trial court results in a waiver of those issues on appeal. State v. Bowersock, 7th Dist. Nos. 05-MO-19, 05-MO-20, 2006-Ohio-7102, at ¶ 25. Therefore, it would appear appellant has waived review of R.C. 2919.25's constitutionality.
 {¶ 19} But at least one other court has overlooked the fact that the appellant neglected to raise the issue of R.C. 2919.25's constitutionality in the trial court and went on to consider the appellant's argument on appeal. See State v. Rodriguez, 6th Dist. No. H-05-020, 2006-Ohio-3378, at ¶ 9 (noting that the issues raised in the appeal were timely and developing rapidly and the matter would be certified to the Ohio Supreme Court).
 {¶ 20} Based on the Sixth District's reasoning, we too will review appellant's constitutional challenge despite his failure to previously raise it.
 {¶ 21} A constitutional challenge can take one of two forms: (1) unconstitutional on the statute's face or (2) unconstitutional as applied to the facts.
 {¶ 22} This court has previously held that R.C. 2919.25 is constitutional on its face. State v. McCaslin, 7th Dist. No. 05 CO 44,2006-Ohio-891; State v. Rexroad, 7th Dist. No. 05 CO 36, 2005-Ohio-6790. Now, the Ohio Supreme Court too has ruled that R.C. 2919.25 is constitutional. State v. Carswell, 114 Ohio St.3d 210, 871 N.E.2d 547,2007-Ohio-3723. The Court held:
 {¶ 23} "[T]he term `person living as a spouse' as defined in R.C.2919.25 merely identifies a particular class of persons for the purposes of the domestic-violence statutes. It does not create or recognize a legal relationship that approximates the designs, qualities, or significance of marriage as prohibited by Section 11, Article XV of the Ohio Constitution. Persons who satisfy the `living as a spouse' category are not provided any of the rights, benefits, or duties of marriage. A `person living as a spouse' is simply a classification with significance to only *Page 4 
domestic-violence statutes. Thus, R.C. 2919.25 is not unconstitutional and does not create a quasi-marital relationship in violation of Section11, Article XV of the Ohio Constitution." Id. at ¶ 37.
 {¶ 24} The Court reasoned that the domestic violence statute was meant to distinguish domestic violence from assault, noting that the conduct of the accused is the same in both crimes. Id. at ¶ 29. However, the relationship with the accused distinguishes the two crimes. It pointed out that physical harm caused to another is an assault, while physical harm caused to a family or household member is domestic violence. Id., citing R.C. 2903.13, R.C. 2919.25. The Court found that the distinction between the two crimes is significant because the General Assembly clearly intended to offer protection to a large class of people by enacting R.C. 2919.25(F). Id. at ¶ 32. It noted that in addition to people "living as a spouse," R.C. 2919.25(F)(1) also "recognizes at least 11 other classifications of specific victims: spouse, former spouse, a parent, a child, a blood relative (consanguinity), an in-law (affinity), the parent of a spouse or former spouse, the child of a spouse or former spouse, a blood relative or in-law of a spouse or former spouse, and the natural parent of a child that is also the issue of the offender." Id. The Court found important the fact that R.C.2919.25 does not create any special or additional rights, privileges, or benefits for family or household members, such as are associated with marriage. Id. at ¶ 33.
 {¶ 25} The Court also pointed to the definition of "living as a spouse." R.C. 2919.25 defines this relationship as "a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question." R.C.2919.25(F)(2). The Court pointed out that the state does not "create cohabitation; rather it is a person's determination to share some measure of life's responsibilities with another that creates cohabitation. The state does not have a role in creating cohabitation, but it does have a role in creating a marriage." Carswell, at ¶ 35.
 {¶ 26} Thus, the Court concluded that R.C. 2919.25 is not in conflict with the *Page 5 
Defense of Marriage Amendment because:
 {¶ 27} "While the intent of the domestic-violence statute is to protect persons from violence by close family members or residents of the same household, the intent of the marriage amendment was to prevent the creation or recognition of a legal status that approximates marriage through judicial, legislative, or executive action." Id. at ¶ 36.
 {¶ 28} For these reasons, R.C. 2919.25 is facially constitutional.
 {¶ 29} In this case, appellant further argues that R.C. 2919.25 is unconstitutional as applied to him — an unmarried, nonspouse, who was living with his girlfriend and her children at the time of his offense.
 {¶ 30} This court most recently addressed this issue in State v.Carnes, 7th Dist. No. 05-MA-231, 2007-Ohio-604. In Carnes, we addressed whether R.C. 2919.25 was unconstitutional as applied given three specific facts: (1) at the time of the alleged crime, the defendant and the victim were living together as boyfriend and girlfriend; (2) the two were not married; and (3) the defendant was a person living as a spouse as defined by the domestic violence statute. Id. at ¶ 9.
 {¶ 31} In the present case, the same three facts are present. This case went to a bench trial where the evidence demonstrated that at the time of the crime, appellant and Brenda were living together as girlfriend and boyfriend for two-and-a-half years and were not married but appeared to be living as spouses as defined by R.C. 2919.25. (Tr. 13, 48, 58-59, 80).
 {¶ 32} In Carnes, this court relied on our previous decision inGough v. Inner, 7th Dist. No. 05 CO 33, 2006-Ohio-3522. InGough, we reviewed whether R.C. 3113.31, the statute providing for a domestic violence civil protection order (DVCPO), was in conflict with the Defense of Marriage Amendment. Pursuant to R.C. 3113.31(D), a trial court can issue a DVCPO if a petitioner can prove, by a preponderance of the evidence, that the petitioner is a family or household member of the respondent and that the petitioner is in immediate and present danger of domestic violence by the respondent. A person is a "family or household member" if, *Page 6 
among other things, he or she is "a person living as a spouse." R.C.3113.31(A)(3)(ii)(4). In Carnes, we pointed out that the definition of "person living as a spouse" used in R.C. 3113.31 is almost identical to the definition used in R.C. 2919.25. Carnes, at ¶ 25.
 {¶ 33} We then went on to quote Gough as follows:
 {¶ 34} "`After reviewing these statutes and the caselaw, we conclude that R.C. 3113.31 does create or recognize a legal status. The classes of people identified in the statute are the only people who are allowed to file a petition for a DVCPO. Thus, they have a condition, the ability to obtain a DVCPO, recognized in the eyes of the law. R.C. 3113.31, therefore, creates or recognizes a legal status for unmarried individuals. However, this conclusion cannot end our analysis. We must determine whether this legal status approximates marriage. Accordingly, we will examine the design, qualities, significance, and effect of marriage.
 {¶ 35} "`Marriage' is a status created by operation of law."Langer v. Langer (1997), 123 Ohio App.3d 348, 353. It is a civil contract, of a peculiar character and subject to peculiar principles, which is designed "to perpetuate family groups within the larger social entitles [sic] of which each marital unit is a part." Vrabel v.Vrabel (1983), 9 Ohio App.3d 263, 269; Coleman v. Coleman (1972), 32 Ohio St.2d 155, 161. Marriage "`involves a personal union of those participating in it of a character unknown to any other human relation.'" In re Soeder's Estate (1966), 7 Ohio App.2d 271, 290, quoting Parke v. Parke (1920), 25 Haw. 397.
 {¶ 36} "The law recognizes the special nature of marriage in many ways. For instance, only married couples have the right to a dower interest, R.C. 2103.02; the right to consortium, Anderson v.Brush-Wellman, Inc. (1991), 77 Ohio App.3d 657, 662; the right to spousal support, R.C. 3105.18; intestate succession preferences, R.C.2105.06; testimonial privileges, 2317.02(D); and testamentary property rights, such as electing to take against the will. R.C. 2106.01. In addition, spouses enjoy pension benefits, immigration preferences, tax preferences, health insurance, and conjugal visits. McIntosh at 3, citing Sowald Morganstern, Domestic Relations Law *Page 7 
(2002), Sec. 2:1.
 {¶ 37} "`In the eyes of the law, marriage is a special status which confers many rights and benefits upon the parties to a marriage. R.C.3113.31 gives unmarried couples the ability to receive a DVCPO. This legal status falls far short of the legal status accorded to marriage. Thus, R.C. 3113.31 does not violate the plain language of Article XV, Section 11 because the legal status it creates does not approximate the design, qualities, significance, or effect of marriage.'"Carnes, at ¶¶ 26-30, quoting Gough, at ¶¶ 23-26.
 {¶ 38} We then went on to apply the reasoning in Gough to the issue of R.C. 2919.25's constitutionality:
 {¶ 39} "The reasoning that we used to affirm the constitutionality of the DVCPO statute applies equally as well to the criminal domestic violence statute. If a legal status is created for cohabiting couples under the criminal domestic violence status, that status does not approximate the many-faceted legal status that accompanies the marital state. As such, the criminal statute does not conflict with the constitutional provision. We note that most other courts that have dealt with this issue have concluded that R.C. § 2919.25, the criminal domestic violence statute, is predicated upon the factual determination of cohabitation, not the legal determination of marriage, and have held that the domestic violence statute is not in conflict with the `Defense of Marriage' Amendment.
 {¶ 40} "* * *
 {¶ 41} "Even though this Court's ruling in Gough did not directly address the precise issue raised in the instant appeal, its reasoning is applicable in the determination as to whether the criminal domestic violence statute conflicts with the Defense of Marriage Amendment. Based on the reasoning in Gough, there is no conflict between the statute and the constitutional provision." Id. at ¶¶ 31, 33.
 {¶ 42} Thus, based on this court's rulings in Carnes andGough and the Ohio Supreme Court's holding in Carswell, supra, appellant's assignment of error is without merit. *Page 8 
 {¶ 43} For the reasons stated above, the trial court's judgment is hereby affirmed.
Vukovich, J., concurs in judgment only. See concurring opinion.
Waite, J., concurs.