[Cite as *State v. Sturbois*, 2011-Ohio-2728.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case Nos. 10CA48 |
| | : | 10CA49 |
| Plaintiff-Appellee, | : | |
| | : | DECISION AND |
| v. | : | JUDGMENT ENTRY |
| | : | |
| J. DAVID STURBOIS, | : | |
| Dba JDS Enterprises, | : | |
| | : | |
| and | : | **RELEASED 05/27/11** |
| | : | |
| PENELOPE PLESSET, | : | |
| | : | |
| Defendants-Appellants. | : | |

_____
APPEARANCES:

Adam J. Baker, Athens, Ohio, for appellants.

Patrick J. Lang, Athens City Law Director, and Lisa Eliason, Chief City Prosecutor, Athens, Ohio, for appellee.
_____
Harsha, P.J.

{¶1}   David Sturbois and Penelope Plesset, owners of rental property, appeal their convictions for minor misdemeanor violations of a city ordinance that requires landlords to complete a tenant/occupant education form for each rental dwelling they own that is licensed for fewer than ten occupants.  Under the ordinance, landlords must provide the names and addresses of certain tenants, in some cases identify the relationship those tenants have to each other, and verify that they gave those tenants certain information about city ordinances.  The owners admitted they did not complete the required form but filed motions to dismiss the charges against them, challenging the ordinance on numerous constitutional grounds that the trial court rejected.

{¶2}   Initially, the owners contend that the trial court violated the separation-of-

powers doctrine because it ordered "the City of Athens Prosecutor [to] enforce the * * * ordinance without regard to the size of the apartment [complex]," impermissibly altering the language of the ordinance. However, the trial court did not issue such a ruling in this case. Therefore, we reject this argument.

{¶3}   Next, the owners contend that the ordinance violates their right to equal protection because the ordinance arbitrarily excludes Ohio University dormitories from its coverage. However, the City had a valid interest in curbing problems on off-campus rental properties. Moreover, the City chose a rational means to deal with those problems, i.e. having landlords educate off-campus tenants on various City ordinances.

{¶4}   The owners also contend that the ordinance violates their constitutional right to privacy because it forces them to act as "investigators" for the City. However, the ordinance only requires disclosure of information landlords ordinarily have about their tenants as part of the landlord-tenant relationship. Therefore, we reject this argument.

{¶5}   In addition, the owners complain that the ordinance violates their tenants' constitutional right to privacy. However, the owners failed to show any hindrance to their tenants' ability to protect their own privacy rights. Therefore, the owners lack standing to raise this argument, and we reject it.

{¶6}   Next, the owners argue that landlords could be unconstitutionally prosecuted under the ordinance for their tenants' failure to sign the tenant/occupant education form. However, the City prosecuted the owners for their own failure to complete the form, not for their tenants' failure to sign it. Ordinarily, a person to whom a law may constitutionally be applied cannot challenge that law on the ground that it may conceivably be applied unconstitutionally to others in situations not before the court.

Therefore, we reject this argument.

{¶7}    Finally, the owners contend that the ordinance violates their right to substantive due process and their liberty and property rights protected under the federal and state constitutions based on the United States Supreme Court's decision in *Moore v. City of East Cleveland* (1977), 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531.  But unlike the ordinance at issue in *Moore*, this one does not impose any restrictions on the categories of individuals who can live together.  Because the owners fail to explain the relevance of *Moore* to this case, we reject their argument.

I.  Facts

{¶8}    In 2005, the Athens City Council enacted Athens City Code 29.03.08.1, which requires landlords of "rental dwellings and rooming houses permitted for fewer than ten occupants" to complete a "Tenant/Occupant Education Form."  The code section includes a copy of the form.  The top of the form contains boxes for the dwelling/street address, name of the owner, owner's telephone number, owner's street address, owner's authorized agent, agent's telephone number, and agent's street address.  The form then contains a notification that:

> For each dwelling unit subject to the provisions of the Athens City Code, this form must be current, completed and signed by the owner or the owner's agent and by each occupant at the time of renting or leasing any residential rental property or at the time of any change in ownership, or occupancy of any residential rental property.  This form shall be kept by the occupants at the address of the residential rental property above.  The occupants shall make it available immediately upon request to an Athens City Code Enforcement Officer or Police Officer in connection with an investigation of a violation occurring at the residential rental property.

{¶9}    Next, the form contains a "DECLARATION OF COMPLIANCE WITH OCCUPANCY RESTRICTIONS" section that states:

> I have made personal and diligent inquiry and make this declaration based

upon personal knowledge.  The names of all the occupants, other than minor children living with a parent or other legal custodian, who reside in this dwelling, are as follows.  If any relationship is claimed between occupants for the purpose of claiming the benefit of the family exemption that allows three adults to reside in the dwelling, the names of the occupants who claim to be related shall be identified below, together with the names of the persons through whom they claim to be related.  You are not required to provide information concerning relationships unless more than four adults reside in the dwelling, and the dwelling is located in an R-1 or R-2 Zone.

{¶10}  Then the form provides occupants with notifications about occupancy restrictions, front yard parking, trash can placement, litter, accumulation of refuse, noise control, nuisance parties, and animal control.  The bottom of the form contains an "Owner Confirmation" section that contains lines for the owner/agent to sign and date the following statement:

I hereby affirm that the above Declaration of Compliance and information provided herein is true and correct and that I have reviewed this form in its entirety with the above occupants.  I further affirm that the above occupants are the only occupants authorized to reside at the rental dwelling unit located at the address of the rental property identified above and that such occupancy by those persons complies with current Athens City Code regulations.  I further understand and declare that this form and the information contained herein are pursuant to current Athens City Code regulations.  The penalty for failure to have this form shall be a minor misdemeanor.

{¶11}  The form also contains an "Occupant Confirmation" section that contains lines for the occupants to sign and date the following statement:

I hereby affirm that the above Declaration of Compliance and information contained herein are true and correct and that if this information changes, I will be required to complete a new form.  I certify that the persons listed above are the only tenants or occupants of the property listed above.  I further certify that I have read the Notice of Disclosure to Occupants and reviewed it with the owner/agent of the property.  I further understand and declare that this form and the information contained herein are made pursuant to current Athens City Code regulations.  I know that the penalty for failure to have this form is a minor misdemeanor.

{¶12}  In March 2010, the Director for the Office of Code Enforcement filed

complaints charging Plesset with one count of violating ACC 29.03.08.1 and charging Sturbois with ten counts of violating the ordinance because they failed to file the form for certain rental dwellings/rooming houses they owned.  The owners filed motions to dismiss based upon a number of arguments, including claims that the ordinance violated their constitutional right to privacy, equal protection, and due process.  After the court denied the motions, the owners pleaded no contest to the charges.  This consolidated appeal followed after the court found them guilty and sentenced them.

## II.  Assignments of Error

**{¶13}** The owners raise the following assignments of error for our review:

I.      THE TRIAL COURT ABUSED ITS DISCRETION BY FINDING THAT ATHENS CITY CODE SECTION 29.03.08.1 DID NOT INFRINGE UPON THE LANDLORDS' AND TENANTS' REASONABLE EXPECTATION OF PRIVACY.

II.     THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO FIND THAT ATHENS MUNICIPAL CODE SECTION 29.03.08.01 [sic] (AS CURRENTLY WRITTEN) DOES NOT COVER OR INCLUDE OHIO UNIVERSITY WHICH VIOLATES THAT [sic] LANDLORD'S CONSTITUTIONAL GUARANTEE OF EQUAL PROTECTION PURSUANT TO THE 14TH AMENDMENT OF THE US CONSTITUTION AND PURSUANT TO ARTICLE I, SECTION 2 OF THE OHIO CONSTITUTION.

III.    THE TRIAL COURT ABUSED ITS DISCRETION IN THAT THE TRIAL COURT EXCEEDED ITS STATUTORY AUTHORITY BY ACTING AS ATHENS CITY COUNCIL WHEN THE TRIAL COURT CHANGED THE IMPORT OF THE ATHENS MUNICIPAL CODE SECTION 29.03.08.01 [sic] TO END ANY EXEMPTION BASED ON NUMBER OF RENTAL UNTIS [sic] OR TO EXEMPT OHIO UNIVERSITY WITHOUT ANY REVIEW OR APPROVAL OF THE ATHENS CITY COUNCIL.

IV.     THE TRIAL COURT ABUSED ITS DISCRETION BY NOT FINDING THAT THE ATHENS MUNICIPAL CODE SECTION 29.03.08.01 [sic] VIOLATES THE LANDLORD'S SUBSTANTIVE DUE PROCESS GUARANTEED BY THE 14TH AMENDMENT OF THE US CONSTITUTION AND BY ARTICLE I, SECTION 16, OF THE OHIO CONSTITUTION SINCE THE SUBJECT ORDINANCE

UNCONSTITUTIONALLY IMPUTES TENANT'S *MENS REA* THAT ACCOMPANIES THE TENANT'S FAILURE TO COMPLY WITH SAID ORDINANCE TO THE LANDLORD'S *MENS REA.*

V.      THE TRIAL COURT ABUSED ITS DISCRETION BY NOT FINDING THAT THE ATHENS MUNICIPAL CODE SECTION 29.03.08.01 [sic] VIOLATES THE LANDLORD'S SUBSTANTIVE DUE PROCESS GUARANTEED BY THE 14TH AMENDMENT OF THE US CONSTITUTION AND BY ARTICLE 1, SECTION 16 OF THE OHOI [sic] CONSTITUTION AND VIOLATES THE LANDLORD'S LIBERTY AND PROPERTY RIGHTS AS PROTECTED UNDER THE FOURTH AMENDMENT OF THE US CONSTITUTION AND ARTICLE 1 OF THE OHIO CONSTITUTION.

For ease of analysis, we will address the assignments of error out of order.

### III.  Separation of Powers

{¶14}  In their third assignment of error, the owners contend that the trial court "exceeded its power by ordering that the City of Athens Prosecutor enforce the Athens ordinance without regard to the size of the apartment [complex][1] which placed the court in the place of being the legislature and changing the language of the ordinance which clearly exceeded the trial court's authority."  In other words, the owners claim that the trial court violated the separation-of-powers doctrine.  This doctrine "implicitly arises from our tripartite democratic form of government and recognizes that the executive, legislative, and judicial branches of our government have their own unique powers and duties that are separate and apart from the others."  *State v. Thompson*, 92 Ohio St.3d 584, 586, 2001-Ohio-1288, 752 N.E.2d 276. The doctrine's purpose "is to create a system of checks and balances so that each branch maintains its integrity and independence."  Id.  It is the judiciary's responsibility to interpret, not create the law.

---

[1] The trial court never ordered the City to enforce the ordinance against a landlord "without regard to the size of the apartment" the landlord owned.  Given the language the owners use in their statement of the assignment of error and our discussion below on the owners' apparent confusion regarding the trial court's "order," we presume that the owners mistakenly omitted the word "complex" from their discussion of the assigned error.

See *State v. Cunningham*, 113 Ohio St.3d 108, 2007-Ohio-1245, 863 N.E.2d 120, at ¶27.  The question of whether a court violated the separation-of-powers doctrine presents a constitutional issue we review de novo.  *Hanners v. Ho Wah Genting Wire & Cable SDN BHD*, Franklin App. No. 09AP-361, 2009-Ohio-6481, at ¶14.

{¶15}  The owners' separation-of-powers argument reflects a confusion of the procedural history of this case with that of an earlier case involving the same parties.  In 2008, the City first charged the owners with violating ACC 29.03.08.1.  At that time, the City had made a policy decision to not enforce the ordinance against owners of large apartment complexes.  *State v. Sturbois*, Athens App. Nos. 09CA12 & 09CA13, 2010-Ohio-2492, at ¶6.  However, in interpreting the ordinance, the trial court concluded that it contained no such exemption and that the City's policy amounted to selective enforcement and violated the owners' equal protection rights.  Id. at ¶¶9, 24.  The court held that it was "incumbent upon the City to either enforce the law uniformly or to dismiss the complaints against the Defendants."  Id. at ¶11.  This appears to be the "order" the owners reference in this assignment of error.

{¶16}  The trial court later found that the City took sufficient steps to enforce the ordinance against large apartment complexes and denied the owners' motions to dismiss the complaints against them.  Id. at ¶12.  The owners pleaded no contest to the charges, and the court found them guilty.  Id. at ¶13.  Neither party appealed the trial court's selective enforcement ruling.  See id. at ¶21.  Instead, the owners complained in part about the court's remedy for the equal protection violation.  We reversed the trial court's decision, finding that the City could not retroactively cure the unconstitutionality of its earlier selective enforcement policy and had to dismiss the charges against the owners.  Id. at ¶25.  However, we noted that the City "may prospectively enforce ACC

29.03.08.1 under 'different circumstances.'" Id.

**{¶17}** Here, the trial court found that our decision in *Sturbois* did not preclude the new charges against the owners because the City corrected its unconstitutional selective enforcement policy, and the owners do not appeal that ruling. The trial court never issued an order in this case instructing the "City of Athens Prosecutor [to] enforce the Athens ordinance without regard to the size of the apartment [complex] * * *." Therefore, there is no ruling for us to evaluate in relation to the owners' separation of powers argument. We overrule the owners' third assignment of error.[2]

IV.  Constitutionality of ACC 29.03.08.1

**{¶18}** In their remaining assignments of error, the owners challenge the constitutionality of ACC 29.03.08.1. We presume that legislative enactments in Ohio, such as ordinances, are constitutional. *State v. Dorso* (1983), 4 Ohio St.3d 60, 61, 446 N.E.2d 449. The party challenging the law has the burden to prove it is unconstitutional beyond a reasonable doubt. *Ohio Grocers Assn. v. Levin*, 123 Ohio St.3d 303, 2009-Ohio-4872, 916 N.E.2d 446, at ¶11. The constitutionality of an ordinance presents a question of law we review de novo. *State v. Carnes*, Mahoning App. No. 05 MA 231, 2007-Ohio-604, at ¶5.

A.  Equal Protection

**{¶19}** In their second assignment of error, the owners contend that ACC 29.03.08.1 violates the federal and state equal protection clauses. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution

---

[2] In their argument, the owners also state that "the trial court exceeded its power by ordering that the City of Athens Prosecutor not consider Ohio University to be subject to its Ohio Revised Code section 1901.13 discusses the powers of the Ohio Municipal Court." Although unclear from this language, it appears that the owners are attempting to raise a separation-of-powers argument in relation to the court's finding that ACC 29.03.08.1 does not apply to Ohio University's dormitories. However, the owners did not assign this issue as error, so we need not address it.

provides: "No State shall * * * deny to any person within its jurisdiction the equal protection of the laws." Ohio's Equal Protection Clause, Section 2, Article I of the Ohio Constitution, states: "All political power is inherent in the people. Government is instituted for their equal protection and benefit * * *." The federal and state equal protection provisions are "functionally equivalent and require the same analysis." *State v. Williams*, 126 Ohio St.3d 65, 2010-Ohio-2453, 930 N.E.2d 770, at ¶38, citing *Eppley v. Tri-Valley Local School Dist. Bd. of Edn.*, 122 Ohio St.3d 56, 2009-Ohio-1970, 908 N.E.2d 401, at ¶11.

{¶20} "The Equal Protection Clause[s] [do] not forbid classifications. [They] simply keep[ ] governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Pickaway Cty. Skilled Gaming, L.L.C. v. Cordray*, 127 Ohio St.3d 104, 2010-Ohio-4908, 936 N.E.2d 944, at ¶16, quoting *Burnett v. Motorists Mut. Ins. Co.*, 118 Ohio St.3d 493, 2008-Ohio-2751, 890 N.E.2d 307, at ¶30. "Courts apply varying levels of scrutiny to equal-protection challenges depending on the rights at issue and the purportedly discriminatory classifications created by the law." Id. at ¶18. If a law does not implicate a fundamental right or a suspect classification, rational-basis review applies and a court will not find that the law violates equal-protection principles so long as "it is rationally related to a legitimate government interest." *Williams* at ¶39, citing *Eppley* at ¶15.

{¶21} "The rational-basis test involves a two-step analysis. We must first identify a valid state interest. Second, we must determine whether the method or means by which the state has chosen to advance that interest is rational." *McCrone v. Bank One Corp.*, 107 Ohio St.3d 272, 2005-Ohio-6505, 839 N.E.2d 1, at ¶9, citing *Buchman v. Wayne Trace Local School Dist. Bd. of Edn*, 73 Ohio St.3d 260, 267, 1995-Ohio-136,

652 N.E.2d 952.  "Under the rational-basis standard, a state has no obligation to produce evidence to sustain the rationality of a statutory classification."  *Pickaway Cty. Skilled Gaming, L.L.C.* at ¶20, quoting *Columbia Gas Transm. Corp. v. Levin*, 117 Ohio St.3d 122, 2008-Ohio-511, 882 N.E.2d 400, at ¶91.  The party challenging the constitutionality of a law "bears the burden to negate every conceivable basis that might support the legislation."  Id.

**{¶22}**  The owners complain that the ordinance violates their right to equal protection because it makes an arbitrary distinction between off-campus landlords, who must submit the tenant/occupant education form, and the university, which does not have to submit the form for students living in on-campus dormitories.  The owners appear to frame their equal protection argument as a selective enforcement issue.  They seem to argue that the ordinance applies to Ohio University dormitories but the trial court and City have "excepted" the university from enforcement.  However, the trial court did not "except" the university from the ordinance's requirements.  The court interpreted the ordinance and found that as written it did not apply to the university's dormitories.  Thus, we view the owner's equal protection argument as a facial challenge to the constitutionality of the ordinance, not a challenge to the constitutionality of the ordinance as applied to a particular set of facts.

**{¶23}**  The owners do not argue that this case involves a fundamental right or suspect classification and appear to recognize that rational-basis review applies to their claim.

**{¶24}**  The trial court concluded that the "primary purpose of the ordinance was to improve occupant behavior in off campus rental properties" by "educating tenants as to certain local ordinances on property use and by verifying that there are not more than

three unrelated tenants in an R-1 or R-2 residential zone." The court found that "[g]iven that the Ohio University campus is not zoned by the City of Athens, the limited occupancy restriction[s] [in the city code] * * * [have] no applicability to the dormitories." And concerning the matters regulated by the property use ordinances mentioned on the tenant/occupant education form, the court found that the university's "residence life or custodial staff" handled those matters for the campus. The court found that because the perceived problems that led to the ordinance were "in off campus neighborhoods rather than on campus, notice to campus residents would seem to miss the intended target." The court further found that the City lacked authority to prosecute the university for violating a local ordinance because the university was a part of the state government.

**{¶25}** The owners argue that the trial court "admits that education of the student tenants is the admitted goal of the subject ordinance." And they claim that "[i]f the purpose of this ordinance is to educate all Ohio University students about Athens Ordinances and to collect the names and addresses of the tenants in the City of Athens, then this ordinance fails to cover all the rental units located in Athens." The owners contend that the city council erroneously assumed that students living in Ohio University's dorms do not "park cars or walk anywhere but on campus and never on Athens streets."

**{¶26}** The owners' argument seems to confuse the ordinance's "purpose" with the means the City chose to achieve its purpose. The owners appear to implicitly acknowledge that the city council promulgated the ordinance in response to problems on off-campus rental properties, not university property. The city council attempted to use the tenant/occupant education form as a means of correcting these problems. In

essence, the owners complain that the City's method or means is irrational because the university does not have to give students who live in on-campus dormitories the form, and those students might go to off-campus properties and violate City ordinances.

**{¶27}** We find this argument unpersuasive.  Certainly a city has a legitimate interest in promoting compliance with its laws, particularly in locations where compliance has been lacking.  As the trial court pointed out, it is logical for the City to focus an educational program intended to increase compliance with city ordinances on off-campus rental properties on the people who actually live on, and therefore likely spend the most time on, those properties.  Thus, we conclude that the City had a rational basis for distinguishing between off-campus rental properties and on campus dormitories when it enacted ACC 29.03.08.1.  We reject the owners' equal protection argument and overrule their second assignment of error.

B.  Privacy

**{¶28}** In their first assignment of error, the owners contend that the trial court abused its discretion when it found that ACC 29.03.08.1 did not violate their constitutional right to privacy or the constitutional right of their tenants to privacy.  At the outset, we note that the abuse of discretion standard is not our standard of review.  Again, the constitutionality of an ordinance is a question of law we review de novo.  *Carnes*, supra, at ¶5.

**{¶29}** The federal constitutional right of privacy is rooted in the Fourteenth Amendment's concept of "personal liberty."  *Stone v. Stow* (1992), 64 Ohio St.3d 156, 160-161, 593 N.E.2d 294, citing *Roe v. Wade* (1973), 410 U.S. 113, 152, 93 S.Ct. 705, 35 L.Ed.2d 147.  "[T]he right to privacy under Section 1, Article I [of the Ohio Constitution] runs parallel to those rights of privacy guaranteed by the Fourteenth

Amendment to the United States Constitution." *State v. Williams*, 88 Ohio St.3d 513, 525, 2000-Ohio-428, 728 N.E.2d 342, citing *Direct Plumbing Supply Co. v. Dayton* (1941), 138 Ohio St. 540, 545, 38 N.E.2d 70. Moreover, as the *Williams* Court explained:

> The right to privacy has been described as "the right to be let alone; to live one's life as one chooses, free from assault, intrusion or invasion except as they can be justified by the clear needs of the community living under a government of law." *Time, Inc. v. Hill* (1967), 385 U.S. 374, 413, 87 S.Ct. 534, 555, 17 L.Ed.2d 456, 481 (Fortas, J., dissenting); see, also, *Housh v. Peth* (1956), 165 Ohio St. 35, 39, 59 O.O. 60, 62, 133 N.E.2d 340, 343. As Justice Brandeis observed, the right to privacy is "the most comprehensive of rights and the right most valued by civilized men." *Olmstead v. United States* (1928), 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944, 956 (Brandeis, J., dissenting). Yet the right to privacy is not absolute. See *State ex rel. Beacon Journal Publishing Co. v. Akron* (1994), 70 Ohio St.3d 605, 608, 640 N.E.2d 164, 167. Privacy of the individual will yield when required by public necessity. *Time, Inc.*, 385 U.S. at 413, 87 S.Ct. at 555, 17 L.Ed.2d at 481.

Id.

**{¶30}** Under ACC 29.03.08.1, landlords must disclose the names and addresses of their tenants, other than minor children living with a parent or other legal custodian. Landlords must also disclose information about the familial relationship tenants have to each other if more than four adults reside in an R-1 or R-2 zone dwelling. An R-1 residential zone can contain one-family dwellings; an R-2 residential zone can contain one- and two-family dwellings. ACC 23.04.01; ACC 23.04.02. The Athens City code defines a family as "[o]ne or more persons related by blood, marriage, or adoption." ACC 23.10.01.

**{¶31}** The owners do not argue that they have a privacy interest in this information about their tenants. Instead, they appear to argue that the ordinance forces them to collect information about their tenants, and by compelling them to act as

"investigators" for the City, the ordinance somehow violates their constitutional right to privacy. The only authority the owners cite for this proposition is an Eighth District case, *City of North Olmsted v. Hagan* (Feb. 26, 1976), Cuyahoga App. No. 34400, 1976 WL 190727 (per curiam). In *Hagan*, a landlord challenged an ordinance that required him to give the city's tax administration office a list of the names and addresses of persons or entities occupying, renting or leasing any premises from him. Id. at *1. The *Hagan* Court found that the ordinance forced the landlord to do investigative work for the City and at worst compelled him to "spy on his fellow citizen as an investigative arm of the city." Id. at *2. The Court found the ordinance unconstitutional, concluding that the landlord's "constitutional right of privacy should not be imposed upon by legal obligation to act as the city's investigator." Id. at *3.

{¶32} Even if we assumed that the *Hagan* court correctly found the right to privacy encompassed protection from acting as a government investigator, as the trial court pointed out, landlords typically already possess the names of their tenants as part of the landlord-tenant business relationship. It is unclear from the record whether the owners in this case would have had to reveal the relationships of any of their tenants under the ordinance, but landlords in R-1 and R-2 residential zones would also presumably know the relationships among their adult tenants to ensure rentals did not run afoul of City ordinances. Nothing in ACC 29.03.08.1 impresses a duty on a landlord to investigate or spy on his tenants. Instead, the landlord discloses information he already has about his tenants in the process of verifying that he has given those tenants the required educational information. Thus, we reject the owners' claim that ACC 29.03.08.1 violates their constitutional right to privacy.

{¶33} The owners also contend that ACC 29.03.08.1 violates their tenants' right

to privacy. "A party must have standing to be entitled to have a court decide the merits of a dispute." *Utility Serv. Partners, Inc. v. Pub. Utilities Comm. of Ohio*, 124 Ohio St.3d 284, 2009-Ohio-6764, 921 N.E.2d 1038, at ¶49, quoting *N. Canton v. Canton*, 114 Ohio St.3d 253, 2007-Ohio-4005, 871 N.E.2d 586, at ¶11. Generally "a litigant must assert its own rights, not the claims of third parties." Id., quoting *N. Canton* at ¶14. However, there may be circumstances where it is necessary to grant a party standing to assert another's rights. Id., citing *Kowalski v. Tesmer* (2004), 543 U.S. 125, 129-130, 125 S.Ct. 564, 160 L.Ed.2d 519. "Third-party standing is 'not looked favorably upon[.]'" Id., quoting *Kowalski* at 130. However, it may be granted when a claimant: 1.) suffers its own injury in fact; 2.) possesses a sufficiently "'close' relationship with the person who possesses the right"; and 3.) shows some "hindrance" to seeking relief that stands in the way of the person who possesses the right. Id., quoting *E. Liverpool v. Columbiana Cty. Budget Comm.*, 114 Ohio St.3d 133, 2007-Ohio-3759, 870 N.E.2d 705, at ¶22.

**{¶34}** Even if the owners meet the first and second prongs of this test, they failed to show any hindrance to their tenants' ability to protect their own privacy interests. See id. at ¶52. Because the owners lack standing to assert their tenants' privacy rights, we reject their argument. We overrule the first assignment of error.

C. Tenant's Failure to Sign Form

**{¶35}** In their fourth assignment of error, the owners contend that ACC 29.03.08.1 violates the substantive due process rights of landlords because if a tenant refuses to sign the form, the landlord becomes criminally liable even though the landlord cannot force the tenant to sign. In the body of their argument, the owners also contend that the ordinance violates their procedural due process rights for the same reason. However, they did not assign that issue as error, so we do not address it.

**{¶36}** The trial court found that ACC 29.03.08.1 "suggests" that tenants have two duties: 1.) to have a copy of the form available upon request of an enforcement officer; and 2.) to sign an affirmation that the occupant identification is correct and current and that the tenant reviewed the educational information with the owner or owner's agent. However, the court held that the ordinance did not actually impose any duties on tenants, thus a landlord was not subject to criminal liability under the ordinance for his tenant's failure to act. Thus, the court concluded that the owners' due process concern was "moot." The owners essentially argue that the trial court misinterpreted the ordinance, that ACC 29.03.08.1 in fact subjects landlords to criminal liability for their tenants' failure to sign the form, and that the ordinance therefore violates the substantive due process rights of landlords.

**{¶37}** Ordinarily, "a person to whom a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court." *Tipp City v. Dakin*, 186 Ohio App.3d 558, 2010-Ohio-1013, 929 N.E.2d 484, at ¶42, quoting *New York v. Ferber* (1982), 458 U.S. 747, 767, 102 S.Ct. 3348, 73 L.Ed.2d 1113; See generally *Palazzi v. Estate of Gardner* (1987), 32 Ohio St.3d 169, 512 N.E.2d 971, at syllabus. Here, the City did not prosecute the owners for filing forms their tenants refused to sign – the City prosecuted the owners for failing to file the forms at all. Thus, the trial court did not need to determine whether landlords could be constitutionally prosecuted for the failure of their tenants to sign the form because the owners could not challenge the statute on that basis. We overrule the fourth assignment of error.

### D. Other Constitutional Rights

**{¶38}** In their fifth assignment of error, the owners argue that the ordinance

violates their right to substantive due process and their liberty and property rights protected under the federal and state constitutions based on the United States Supreme Court's decision in *Moore*, supra. The owners contend that the trial court abused its discretion when it upheld the constitutionality of ACC 29.03.08.1. But again, the constitutionality of an ordinance is a question of law we review de novo. See *Carnes*, supra, at ¶5.

{¶39} In their argument, the owners provide a synopsis of *Moore* and summarily conclude that the "logic of *Moore*" shows how ACC 29.03.08.1 violates their constitutional rights. The owners also contend that the ordinance violated their tenants' rights to substantive due process and deprives tenants of their liberty and property rights under the federal and state constitutions. But the owners did not assign that issue as error, so we need not address it or the standing issue such an argument raises.

{¶40} *Moore* involved an ordinance that limited occupancy of a dwelling unit to members of a single family and recognized only certain categories of related individuals as a family. *Moore* at 495-496. The Court found that the ordinance deprived a woman of her rights under the Due Process Clause of the Fourteenth Amendment because it prohibited her from living with her son and two grandsons, who were first cousins. See id. at 496, 499-500. The Court concluded that such an intrusion on the regulation of family was not justified as the ordinance only marginally served the objectives advanced by the government, such as preventing overcrowding, minimizing traffic and parking congestion, and avoiding an undue financial burden on the city school system. See id. at 499-500.

{¶41} The owners make no effort to explain how *Moore* relates to this case, nor

is any connection readily apparent to us. ACC 29.03.08.1 does require that landlords disclose the relationship among their tenants under certain circumstances. The City could use that information to determine whether the tenancy satisfies use restrictions in R-1 and R-2 residential zones. See ACC 23.04.01; ACC 23.04.02. But unlike the ordinance in *Moore*, ACC 29.03.08.1 itself does not impose any restrictions on the categories of individuals who can live together. And because the owners offer no other basis for their claim that the ordinance violates their right to substantive due process and their liberty and property rights, we reject their argument and overrule the fifth assignment of error.

{¶42}  The owners also briefly reiterate their right to privacy and equal protection arguments in this portion of their briefs. However, we already rejected these arguments in Sections IV.A. and IV.B. of this opinion.

## V.  Summary

{¶43}  Having overruled each of the assignments of error, we affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that Appellants shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Municipal Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

Kline, J. & McFarland, J.:  Concur in Judgment and Opinion.


For the Court


BY: _____
        William H. Harsha
        Presiding Judge


### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**